## THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

ENERGIZER BRANDS, LLC,
a Delaware Corporation
533 Maryville University Drive
St. Louis, MO 63141

LAURA CRISTINA ROBAYO VILLAMIZAR,
a Missouri Resident

    *Plaintiffs*,

                 Case No.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY;
245 Murray Ln. SW
Washington, DC 20528

CHAD F. WOLF, in his official capacity as
United States Secretary of Homeland Security;
245 Murray Ln. SW
Washington, DC 20528

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES ("USCIS"),
20 Massachusetts Ave NW
Washington, DC 20529

KENNETH T. CUCCINELLI, in his official
capacity as Acting Director of the United States
Citizenship and Immigration Services,
20 Massachusetts Ave NW
Washington, DC 20529

KATHY A. BARAN, in her official capacity as
Director, USCIS California Service Center
24000 Avila Road
Laguna Niguel, CA 92677
    *Defendants*.

---

## COMPLAINT FOR DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §2201 et seq. AND JUDICIAL REVIEW UNDER THE ADMINISTRATIVE PROCEDURE ACT (APA) 5 U.S.C. §701, et seq.

Plaintiffs, by and through their undersigned attorneys, commence this action against the above-named Defendants, and respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for Declaratory Judgment and Judicial Review under The Declaratory Judgment Act, 28 U.S.C. § 2201, et seq. and the Administrative Procedure Act ("APA") 5 U.S.C. § 701, et seq.

2.      Simply stated, the Congressionally enumerated purpose for the L-1 intracompany transferee executive or manager visa is to "eliminate problems faced by international companies having offices abroad in transferring key personnel freely within the organization." Temporary Alien Workers Seeking Classification Under the Immigration and Nationality Act, 52 Fed.Reg. 5738, 5739 (Feb. 26, 1987).

3.      In the instant case, Defendants have erroneously denied a petition for renewal of Plaintiffs' existing L-1 visa for Ms. Laura Cristina Robayo Villamizar even though Ms. Robayo Villamizar had already been previously approved for this exact status on May 19, 2017 and the reason for denial did not involve a change in circumstances, but rather, an unlawful re-determination that Ms. Robayo Villamizar's work for Energizer in Colombia prior to 2017 did not meet a new arbitrary and capricious standard Defendants invented for determining whether she was a manager in Colombia before being transferred to the United States in 2017.

4.      In this case, Plaintiffs provided substantial record evidence that, while stationed in Colombia at Energizer de Colombia S.A., Energizer's affiliate company in Bogota, Colombia, from July 2015 until her transfer to the United States in June 2017, Ms. Robayo Villamizar was responsible for leading and managing Energizer's regional planning strategy for its Latin American affiliate and distributor markets and had a team of employees that she directly and indirectly supervised.

5.      Moreover, Plaintiffs also established that, while at Energizer in the United States, Ms. Robayo Villamizar has been in charge of leading and further developing the global supply chain strategy for Energizer Household Products and manages a team of employees to accomplish

2

this purpose.

6.      Defendants' erroneous denial of Plaintiffs' L-1 extension of stay visa petition has unnecessarily injected significant hardship into Energizer's planning and distribution operation during a very critical time in the company's operations.  This uncertainty is threatening U.S. jobs, and has placed the immigration status of Ms. Robayo Villamizar into significant jeopardy.

7.      Upon review of the facts and the governing law of this case, it should become incredibly apparent that this is not a case that should have led to a denial of the extension of stay L-1 visa petition, and the potential deportation of a very talented individual out of the United States in the midst of the COVID-19 crisis.

8.      On May 19, 2017, the State Department approved Plaintiffs' petition for an L-1 visa under Section 101(a)(15)(L) of the Immigration and Nationality Act ("INA") and 8 C.F.R. § 214.2(l) for the period from May 19, 2017 to May 18, 2020 to permit Ms. Laura Cristina Robayo Villamizar to serve as Associate Manager, Planning for Energizer Brands, LLC in the United States.  See Ex. 1.  As part of this approval, the State Department was required to adjudicate the exact same question of law and fact that was the basis for Defendants' denial of Plaintiffs' renewal petition in 2020—that is, whether Plaintiffs established that Ms. Robayo Villamizar had been employed for Energizer in a position that was managerial while stationed in Colombia.  In 2017, the U.S. Government answered this question in the affirmative and the visa was issued.

9.      During the last three years, Ms. Robayo Villamizar has worked dutifully and successfully in her position of Associate Manager, Planning, earning an annual salary of over $100,000 per year—an amount that would be incomprehensible to pay to an individual not working in a managerial position in St. Louis, MO. See Ex. 2.

10.      On February 26, 2020, Plaintiffs filed a Petition for Nonimmigrant Worker (Form I-129) seeking to renew the L-1 status of Ms. Robayo Villamizar.  Plaintiffs submitted a 323 page submission explaining how Ms. Robayo Villamizar had met the manager standard of 8 CFR § 214.2(l)(1)(ii)(B) both by showing that she supervised and controlled the work of other supervisory, professional, or managerial employees and that she had also been a manager of an

essential function for Energizer while in Colombia (i.e., the Supply/Demand Planning function for the Latin American Region).  Plaintiffs' renewal application—which ended up consisting of over 600 pages of evidence after a supplemental filing was submitted—met all of the statutory and regulatory burdens imposed upon L-1 visa applicants.

11.     Nevertheless, on July 8, 2020, USCIS denied Plaintiffs' application for renewal of Ms. Robayo Villamizar's L-1 visa status on the inexplicable basis that, contrary to the decision already reached in 2017, Ms. Robayo Villamizar was not "employed abroad in a position that was managerial, executive, or involved specialized knowledge." See Ex. 3.

12.     Defendants' decision misguidedly held Plaintiffs to previously unannounced evidentiary standards that were invented entirely out of whole cloth by the Defendants in the middle of the case—and had no basis in, or citation to, any actual governing statutes, regulations, or cases.

13.     Nothing had changed between 2017 when Ms. Robayo Villamizar's visa status was first approved and 2020 when her renewal was denied.

14.     All of the foregoing claims are based upon the inappropriate agency action of denying the I-129 petition for Ms. Robayo Villamizar's L-1 extension of stay visa status for no legitimate reason, and for causing Ms. Robayo Villamizar to be out of status beginning on July 8, 2020, by denying her petition.

15.     Plaintiffs, as applicants for the renewal of Ms. Robayo Villamizar's L-1 status (I-129) are suing Defendants in their official capacity.

16.     As a result of the misguided action of the aforementioned Defendants that is not based on the law, Plaintiffs suffered a legal wrong and are adversely affected within the meaning of the INA.

**PARTIES**

17.     Plaintiff, Energizer Brands, LLC is a limited liability company formed in Delaware and as a subsidiary of Energizer Holdings, Inc. Energizer Brands, LLC was founded in 2015 and is headquartered in St. Louis, Missouri.

18.     Energizer de Colombia S.A., also a subsidiary of Energizer Holdings, Inc., was founded in 1947 and is headquartered in Bogota, Colombia.

19.     Energizer Brands, LLC  and Energizer de Colombia S.A. meet the regulatory definition of qualifying organizations for intracompany transferee petitions under the Immigration and Nationality Act, as both entities are 100% owned by Energizer Holdings, Inc., as evidenced by Energizer Holdings, Inc.'s Blanket L approval issued by Defendants on May 5, 2017. See Ex. 4.

20.     The Energizer group of companies is a global leader in the dynamic business of providing power solutions with a full portfolio of products, including (1) Energizer® brand battery products such as:  Energizer® EcoAdvanced™; Energizer MAX®; Energizer® Ultimate Lithium™; Energizer Recharge®; Everready®; Rayovac ® and Varta ®; (2) Energizer auto care products such as: Armor All ®; STP® and A/C Pro®; Refresh Your Car®; California Scents®; Driven®; Bahama & Co. ®; LEXOL®; ®Eagle One®; Nu Finish®; and Scratch Doctor®, and (3) an extensive line of lighting products designed to meet a variety of consumer needs, including headlights, lanterns, children's lights and area lights. In addition to the Energizer, Eveready and Rayovac brands, we market our flashlights under the Hard Case®, Dolphin®, and WeatherReady® sub-brands.

21.     Plaintiff, Laura Cristina Robayo Villamizar, is a citizen of Colombia who resides in St. Louis, Missouri.  She is a highly experienced industrial engineer and international business specialist with a degree in Business and nearly 10 years of service for Energizer.  She was lawfully employed by Energizer Brands LLC as Associate Manager, Planning on L-1 non-immigrant status and was seeking to renew her status for an additional two years so she could continue to serve in

this position.  Upon receiving her renewal, Plaintiff Robayo Villamizar was to be responsible for continuing to use her talents, training, and experience to lead and further develop the global supply chain planning for Energizer Household Products, which would create more jobs at Energizer for American workers here in the United States.

22.     Defendant, Department of Homeland Security ("DHS") is a federal agency responsible for administering the laws of Congress as to the approval or denial of immigration benefits under the INA and is the parent agency of U.S. Citizenship and Immigration Services.

23.     Defendant, U.S. Citizenship and Immigration Services, is an agency of the federal government within the Department of Homeland Security and is responsible for the administration of laws and statutes governing immigration and naturalization and the adjudication of petitions for immigration and nonimmigrant benefits, including petitions for nonimmigrant workers and petitions and applications for extensions of status.

24.     Defendant, Chad F. Wolf, is the Acting Secretary of the United States Department of Homeland Security ("DHS"), with responsibility for the administration of applicable laws and statutes governing immigration and naturalization.  He is generally charged with enforcement of the Immigration and Nationality Act and is further authorized to delegate such powers and authority to subordinate employees of DHS.  More specifically, the Secretary is responsible for the adjudication of petitions for nonimmigrant workers and petitions and applications for extension of status.

25.     Defendant, Kenneth T. Cuccinelli, is the Acting Director of U.S. Citizenship and Immigration Services, and is responsible for the administration of immigration and naturalization adjudication functions and establishing immigration rules, services, policies, and priorities. These functions include adjudication of petitions for nonimmigrant workers and petitions and applications for extension of status.

26.     Defendant Kathy A. Baran, is the Director of the USCIS California Service Center ("CSC") and is a federal officer acting within the parameters of her authority as the CSC's decision maker concerning all petitions and applications for immigration benefits.  In her official

capacity, Defendant Baran was responsible for ensuring that Plaintiffs' petition and applications

for extension of L-1 visa status would be adjudicated according to the statutes and regulations of

the United States.

## JURISDICTION AND VENUE

27.     This court has jurisdiction of this action pursuant to 28 U.S.C. § 2201, et seq., 28

U.S.C. § 1331, and 5 U.S.C. 701 and 702 et seq., and this action is timely under 28 U.S.C. § 2401.

Relief is requested pursuant to said statutes.  Specifically, this Court has jurisdiction over this

action pursuant to 28 U.S.C. § 1331, which provides that "district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United

States."  Further, the Declaratory Judgment Act, 28 U.S.C. § 2201, provides that: "[i]n a case of

actual controversy within its jurisdiction ... any court of the United States, upon the filing of an

appropriate pleading, may declare the rights and other legal relations of any interested party

seeking such declaration, whether or not further relief is or could be sought." Review is also

warranted and relief sought under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701,

702 et seq., and § 706(1).

28.     Venue properly lies within this district pursuant to 28 U.S.C. § 1391(e), in that

this is an action against officers and agencies of the United States in their official capacities,

brought in the District where the Defendants reside.

## STANDING

29.     Energizer Brands LLC has a legally protected interest in a decision by the

Defendants on its I-129 petition filed on Ms. Robayo Villamizar's behalf which is not arbitrary

and capricious, nor an abuse of discretion, and which is in accordance with law, per 5 U.S.C. §

706(2).  The invasion of this right has caused Energizer Brands LLC concrete and particularized

injury in that, as a result of this invasion, Energizer can no longer employ Ms. Robayo Villamizar's

expert executive and managerial services after her L-1 visa expired and so cannot derive the

expertise and revenue it previously received from the use of her services.  In addition, there is a causal connection between the injury-in-fact and the Defendants' challenged behavior in that it is precisely the Defendants' denial of Ms. Robayo Villamizar's I-129 Petition for a Nonimmigrant Worker which will prevent her from working for Energizer in the future and it is certain that the injury-in-fact will be redressed by a favorable ruling in that such a ruling will enable Energizer to employ Ms. Robayo Villamizar again and so once more derive revenues from her services. Accordingly, Energizer Brands LLC has standing to bring this action. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992).

30.     Ms. Laura Cristina Robayo Villamizar likewise has a legally protected interest in a decision by Defendants on Energizer Brands LLC's petition filed on her behalf which is not arbitrary and capricious, nor an abuse of discretion, and which is in accordance with law, per 5 U.S.C. § 706(2), and this right has been violated because of the improper denial of the I-129 Petition for a Nonimmigrant Worker filed on her behalf.  The violation of this right has caused her concrete and particularized injury in that, as a result of this violation, she likely can no longer be employed by Energizer Brands after her L-1 visa expires and so cannot derive the revenue she previously received from her employment. In addition, her presence in the United States has been rendered unlawful.  Moreover, there is a causal connection between the injury-in-fact and the Defendants' challenged behavior in that it is precisely the Defendants' denial of Ms. Robayo Villamizar's I-129 Petition for a Nonimmigrant Worker which prevents her from working for Energizer in the future and it is certain that the injury-in-fact will be redressed by a favorable ruling in that such a ruling will enable Energizer to employ Ms. Robayo Villamizar and so enable her to support herself and lawfully remain in the United States.  Further, Energizer wishes to continue to employ Ms. Robayo Villamizar in the offered position. Accordingly, Ms. Robayo Villamizar has standing to bring this action. See Lujan, supra.

## EXHAUSTION OF REMEDIES

31.      Plaintiffs have exhausted their administrative remedies. The denial of the Plaintiffs' I-129 Petition for a Nonimmigrant Worker for Ms. Robayo Villamizar constitutes a final administrative action by which "rights or obligations have been determined," or from which "legal consequences will flow," that may be challenged in federal court. Bennett v. Spear, 520 U.S. 154, 177-78 (1997).

## FACTS

### I. Introduction

32.      The following recitation of facts is based solely on the record evidence provided to Defendants.  Plaintiff, Energizer Brands, LLC is a limited liability company formed in Delaware and as a subsidiary of Energizer Holdings, Inc. Energizer Brands, LLC was founded in 2015 and is headquartered in St. Louis, Missouri.

33.      Energizer de Colombia S.A., also a subsidiary of Energizer Holdings, Inc., was founded in 1947 and is headquartered in Bogota, Colombia.

34.      Ms. Laura Cristina Robayo Villamizar is a Colombian national.  She is a highly experienced industrial engineer and international business specialist with nearly 20 years of professional experience and nearly 10 years of experience at Energizer.. Throughout her career, she has demonstrated her ability to lead diverse teams of multi-national professionals to new levels of success in a variety of competitive, cutting-edge markets, and fast-paced environments.

35.      She has a very strong background in supply chain management and planning, having worked in this industry for over 15 years including nearly 10 years at Energizer.  She has proven ability to manage and direct demand and supply planning that allows companies to achieve their goals for each fiscal year.

36.     From July 2015 until her transfer to the United States in June 2017, Ms. Robayo Villamizar was continuously employed with Energizer de Colombia S.A., Energizer's affiliate company in Bogota, Colombia, as Associate Manager, Regional Planning.

37.     Her overall function was to lead and manage the regional planning strategy for Energizer's Latin American affiliate and distributor markets. This included spearheading and developing the Manugistics process, source to customer order process, and representing the region in global planning projects.

38.     Ms. Robayo Villamizar's main responsibility was to develop and implement the best in class supply and demand planning process for all Latin American countries where Energizer has in-market sales direct customers and distributors who sell Energizer products. She planned and executed the Sales and Operations Planning (S&OP) process, an integrated business management process through which the leaders of the main areas in the company continually achieve focus, alignment and synchronization among all functions of the organization. The S&OP includes updated forecasts that lead to overall plans for sales, purchasing, inventory, customer lead-time, new product development, and strategic initiatives. She developed and guided the implementation of this process in each Latin American market by providing leadership to the local planners on key issues at monthly meetings.

39.     Ms. Robayo Villamizar managed and directed the implementation of a new tool for demand and supply planning that allowed less operational load and more analytical work in order to achieve the goals for each fiscal year. This implementation required standardization in processes and information management for each market, mainly in cross- functional responsibilities. Although complex, the implementation was successfully carried out thanks to her negotiation skills and influential managerial position in the Latin America Region. She oversaw several changes in terms of planning tools, processes, and strategies, thus allowing Energizer to grow financially. She increased supply and planning metrics, and changed Energizer's financial

edge in the region. She executed strategic leadership and vastly improved Energizer's financial metrics. She drove internal collaboration between all stakeholders in order to deliver customer satisfaction, working capital targets, and forecasting adherence.

40.     On May 4, 2017, Energizer Holdings Inc. was granted what is known a Blanket Petition for L workers. *See* Ex. 4.  The Corporate L-1 Blanket Petition is a filing that multinational corporations can make with USCIS to facilitate the transfer of certain executives, managers, and professional specialized knowledge employees to the United States on L-1 visas. Once a corporation has been issued an I-797 Blanket Approval Notice, qualifying employees have access to a consular process to obtain the adjudication of an L-1 visa petition.

41.     On May 19, 2017, the State Department, via the U.S. Embassy in Bogota, Colombia approved Ms. Robayo Villamizar's application for L-1 visa status for the period between May 19, 2017 and May 18, 2020.  *See* Ex. 1.

42.     During the period between May 19, 2017 and May 18, 2020, Energizer employed Ms. Robayo Villamizar as Associate Manager, Planning at its headquarters in St. Louis, Missouri. In this role, she lead and developed the supply chain planning strategy for Energizer Household Products. She also spearheaded improvements in strategy, processes, and technology. In addition, she provided functional guidance and oversight to the global logistics teams in order to drive service and cost balance improvements. Finally, she delivered long-term growth and continuous improvements by building and maintaining partnerships with third party logistics providers.

43.     Ms. Robayo Villamizar was the manager who provided leadership, direction, and focus to the organization's supply chain planning functions, which allowed Energizer to meet global demand for its products. She managed, directed, and oversaw a budget of over $83.5 million, which impacted 16 of Energizer's markets. The high level of budgetary authority demonstrated that she managed an essential function for Energizer, one necessary for its continued business success.

44.     Energizer sought to renew Ms. Robayo Villamizar's visa so that she could continue to assess existing and future supply chain management requirements and determine the best methods to ensure Energizer's goods are delivered efficiently and timely, thus ultimately promoting Energizer's Business Unit strategies around the world.

45.     By all accounts, Ms. Robayo Villamizar performed excellently at this job and received annual compensation of over $100,000 per year.

## II. L-1 Visa Renewal Application

46.     On February 26 2020, Plaintiff Energizer Brands LLC filed Form I-129 Petition for a Nonimmigrant Worker on behalf of Plaintiff Laura Cristina Robayo Villamizar, in order to renew her L-1 visa status in the United States until 2022.  The application was assigned USCIS case number WAC2012350772.

47.     Plaintiffs' petition provided the following evidence that Laura Cristina Robayo Villamizar, was a manager at Energizer both in Colombia and in the United States:

a.   A Company letter submitted by Energizer Brands, LLC, in support of the L-lA nonimmigrant visa extension petition;

b.   Employment confirmation letter from Energizer de Colombia, S.A. confirming Ms. Robayo Villamizar's managerial employment abroad;

c.   Organizational chart for Ms. Robayo Villamizar's current/proposed position with Energizer Brands, LLC, in the United States;

d.   Organizational chart from Energizer de Colombia, S.A.'s office confirming Ms. Robayo Villamizar's prior managerial position abroad;

e.   Copy of Ms. Robayo Villamizar's resume and educational credentials (with certified translations);

f.    Copy of Ms. Robayo Villamizar's paystubs from Energizer Brands, LLC in the United States for the last 12-month period, confirming her current employment;

     g.   Copy of Ms. Robayo Villamizar's paystubs from Energizer de Colombia S.A.'s office covering the 12-month period before her transfer, and thus confirming her qualifying employment abroad;

     h.   Copy of Energizer's Blanket L Approval Notice, Receipt Number W AC-17-132-52403, confirming that Energizer Holdings, Inc. 100% owns both Energizer Brands, LLC and Energizer de Colombia, S.A.;

     i.   Copy of the current corporate chart for Energizer Holdings, Inc.;

     j.   Documents evidencing the existence of both Energizer Brands, LLC and Energizer de Colombia, S.A.; and

     k.   Excerpts from Energizer Holdings, Inc.' s recent 10-K filing.

48.     This evidence also should have been more than sufficient to approve Plaintiffs' I-129 petition to extend L-visa status, as the State Department had already adjudicated this decision in Plaintiffs' favor in 2017.  Nevertheless, on April 15, 2020, USCIS sent a request for evidence (RFE) to Plaintiffs indicating that Plaintiffs had not proven that Ms. Robayo Villamizar held a managerial position abroad in Colombia prior to being transferred to the United States.  *See* Ex. 5.

49.     The RFE provided the following list of suggested evidence Plaintiffs could provide to show that Ms. Robayo Villamizar had been a manager in Colombia.  This list included the following items (along with a statement that Plaintiffs could meet their evidentiary burden by submitting "one, some, *or* all of these items.") *Id.* (emphasis added)  The list of suggested items included:

     a.   "If the beneficiary managed a function, explain and provide documentary evidence to establish that the specific function is critical or essential to the foreign entity and that the beneficiary was in a high-level position within the foreign entity, or in a position directly related to a function necessary for the provision of an end product or service of the company. Your explanation should identify the function with specificity and describe the critical or essential nature

of the function and how it relates to the provision of such end product or service. In addition, provide a detailed description of the percentage of time the beneficiary spent performing such duties to demonstrate that the beneficiary primarily managed the function rather than primarily performed the non-qualifying day-to-day duties of the function."

b. "If the beneficiary supervised other supervisory, managerial, or professional employees, you may, but are not required to, submit copies of performance appraisals or reviews conducted by the beneficiary for any such subordinate employees or any evidence that demonstrates the beneficiary has sufficient managerial authority over subordinate employees and is engaged in the hiring and firing of subordinates or recommends the hiring and firing of subordinates as well as other personnel actions." *See* Ex. 5.

50.     It is important to note three things.  First, of the two suggested items requested by USCIS in the RFE, one had already been provided.  Second, the Request for Evidence itself indicated that the evidentiary burden could be met by submitting "one, some, *__or__* all of these items." *See* Ex. 5 (emphasis added).  Third, and most importantly, none of these items are listed in either statutes or regulations as items that are required in order for an L-1 visa to be approved (nor were any such legal citations provided).

51.     Nevertheless, on July 2, 2020, Plaintiffs provided an over 300 page response to the RFE that provided the following additional evidence:

a. A letter from Energizer de Colombia S.A that provided details about her prior position as Associate Manager, Regional Planning, including that Ms. Robayo Villamizar managed a clearly defined essential function for Energizer in Colombia — that is, the Demand/Supply Planning function for the Latin American Region.  She was the manager over this essential function, which impacted Energizer's ability to fulfill their customers' needs in a timely manner.  She served as the senior manager responsible for providing

centralized managerial oversight over the demand/supply chain function to

ensure all processes and procedures, staffing requirements, and budgetary

needs are in place for Energizer's demand/supply chain needs.

  b. a detailed description of the percentage of time Ms. Robayo Villamizar spent

performing managerial duties to demonstrate that Ms. Robayo Villamizar

primarily managed the function rather than primarily performed the non-

qualifying day-to-day duties of the function. This included the following

detailed description of her time as required by the RFE;

| Job Duties | % of time spent |
|---|---|
| Managed, directed, and oversaw direct and indirect reports. This included coordination of training and development within the planning area. Served as the point of escalation for regional supply questions and responsible for setting priority of planners roles and work tasks. Conducted performance reviews and implemented disciplinary proceedings. Approved expenses. Hired, fired, and recommended those. | 15% |
| Managed facilitating planning process improvements for Manugistics capabilities, while reducing working capital investments and achieving targeted levels of customer satisfaction and forecasting accuracy within the country. | 10% |
| Led the S&OP inputs at a regional level. Supported continuous process improvement through the use of demand module within Manugistics and improved on forecast accuracy and bias. | 25% |
| Managed and oversaw the adherence of the supply planning/fulfillment module JDA (Manugistics) for all brands and segments. Provided guidance and independent analysis of data and made the ultimate decisions related to sourcing records, safety stock values, manufacturing lot sizes, and various planning parameters. | 10% |
| Managed, directed, and oversaw the Latin America key global planning initiatives and projects. | 10% |
| Developed and fostered relationships with other cross-functional groups including but not limited to Marketing, Sales, Finance, Sourcing Locations and Planning Leadership. | 5% |
| Liaised with source locations and country planners to ensure alignment to SLIs, lead times, and minimum order quantities. | 10% |
| Developed and led communication of functional results and activities to Regional Leadership. | 15% |
| **TOTAL** | 100% |

c. A copy of Ms. Robayo Villamizar's performance review from 2015. In the review, her manager states Ms. Robayo Villamizar was responsible for determining the best methods for distribution channels for the LATAM region, at her discretion. Additionally, the manager states that Ms. Robayo Villamizar led and developed the SKU Rationalization Project. Based on the review, it is clear that Ms. Robayo Villamizar was a manager and had autonomy and discretion over projects.

d. A copy of a 2015 performance review that Ms. Robayo Villamizar conducted on her direct report Mireya Rosa Parra. In the review, Ms. Robayo Villamizar sets a 2016 goal for the employee. Conducting performance reviews and setting goals for direct reports falls under the purview of a manager.

e. A copy of a presentation Ms. Robayo Villamizar wrote that discusses the SKU Rationalization Project she spearheaded and developed. The presentation discusses the results and indicates that all regions are to replicate the project. Developing projects and having ultimate decisions over the direction of projects evidences managerial autonomy.

f. A copy of an e-mail dated March 2, 2016 and accompanying presentation discussing Ms. Robayo Villamizar's ultimate choices in the supply chain distribution and planning routes for Energizer's products that will meet customers' needs, as well as increase Energizer's revenue. It is clear that Ms. Robayo Villamizar had unfettered managerial discretion in determining the routes.

g. A copy of an e-mail dated March 2, 2016 where Ms. Robayo Villamizar indicates the salary she set for a direct report. Decisions over salaries for subordinates demonstrates managerial control.

h.  A copy of an e-mail dated March 4, 2016 and the accompanying presentation where Ms. Robayo Villamizar advises of the decisions she made about the supply chain channels and how they meet Energizer's Key Performance Indicators (KPI) and thus increase revenue.  In the e-mail chain, she directs other departments to utilize the routes she has selected.  Additionally, reading the e-mail chain it is clear she assigned various direct reports tasks related to implementing the supply chain channels. This evidences her ultimate decisions over the critical supply chain function, as well as her ability to direct departments and subordinates to perform tasks and implement her projects and decisions. The other departments and direct reports thus perform the day-to-day administrative tasks related to the function, which allows Ms. Robayo Villamizar to manage the function.

i.  A copy of an e-mail dated March 24, 2016.  The Exhibit included the original Spanish language e-mail and relevant certified translated English portions. In the e-mail, the Human Resources Department advises one of Ms. Robayo Villamizar's direct reports about a "Performance Management" process the subordinate must complete.  The Human Resources Department indicates that Ms. Robayo Villamizar is the direct report's manager and thus must be included in the process.  This demonstrates Ms. Robayo Villamizar is a manager of direct reports and involved in their performance reviews.

j.  A copy of an e-mail dated June 15, 2016 where Ms. Robayo Villamizar was asked to determine the global supply chain goals for 2017. Clearly, this evidences she has managerial autonomy over the supply chain function and discretion in setting the goals.

k.  A copy of an e-mail dated June 28, 2016 where Ms. Robayo Villamizar is asked by the Human Resources Department if she agrees with the included statements about her direct reports based on the performance reviews Ms. Robayo

Villamizar conducted.  This demonstrates she had direct reports and conducted performance reviews.

l.  A copy of an e-mail dated July 6, 2016 where Ms. Robayo Villamizar is asked by a direct report to review the Target Inventory Analysis.  She makes suggestions.  The subordinate indicates he will follow up with her in order to receive final approval.  Ultimate decisions over projects and their approval falls under the purview of a manager.

m.  A copy of an e-mail dated August 30, 2016. The Exhibit included the original Spanish language e-mail and relevant certified translated English portions. In the e-mail, Ms. Robayo Villamizar assigns a direct report to a project. Decisions over subordinates and their work schedules evidences managerial control.

n.  A copy of an e-mail dated August 30, 2016 where Ms. Robayo Villamizar is asked if she agrees with a travel budget for her department. Decisions over the travel in her department and accompanying budget demonstrates managerial authority.

o.  A copy of an e-mail dated September 1, 2016 where the Human Resource Department asks Ms. Robayo Villamizar about the last date of work for a direct report whose employment Ms. Robayo Villamizar terminated.  Note that Ms. Robayo Villamizar's memorandum about why the person's employment was terminated is attached. The Human Resources Department indicates they will start the paperwork required for the termination.  Firing direct reports demonstrates managerial autonomy.

p.  A copy of an e-mail and letter dated September 14, 2016.  The Exhibit included the original Spanish language e-mail, letter, and relevant certified translated English portions. In the e-mail, Ms. Robayo Villamizar is advised that a direct report's employment has been terminated as she requested. Decisions over the

termination of subordinates' employment falls under the purview of a manager.

q. A copy of an e-mail dated September 26, 2016.  The Exhibit included the original Spanish language e-mail and relevant certified translated English portions. In the e-mail, Ms. Robayo Villamizar discussed with the regional teams the correct methods to implement and the issues with the manner in which they are measuring KPIs  In the e-mail, the different region representatives were initially seeking her approval of their metrics, which Ms. Robayo Villamizar does not approve due to the wrong methodology being utilized.   Decisions over the plans to meet KPIs and the required implementation methods demonstrates managerial power.

r. An e-mail dated October 12, 2016 where Ms. Robayo Villamizar approved a merit increase for a direct report.  In the chain, there were issues initially implementing the salary increase due to the raise being above the normal range allowed.  Decisions over the salaries of subordinates evidences managerial prerogative.

s. An e-mail dated October 28, 2016. The Exhibit included the original Spanish language e-mail and relevant certified translated English portions. In the e-mail, Ms. Robayo Villamizar tells her direct report to provide her his 2017 objectives, so that they can meet and discuss them.  Assigning direct reports tasks and having ultimate approval over their goals evidences managerial control.

t. An e-mail dated November 11, 2016. The Exhibit included the original Spanish language e-mail and relevant certified translated English portions. In the e-mail, the Human Resources Department advises Ms. Robayo Villamizar they have a list of candidates for her to review to replace the employee whose employment she terminated. Final decisions over who to hire falls under the purview of a manager.

u.  An e-mail dated November 16, 2016 where Ms. Robayo Villamizar indicates to her direct reports that she has determined there is an issue with the DII results.  She advises her direct reports to devise a plan to remedy the situation – a plan she will review and have final authority over.  A direct report indicates he will have a plan ready for their next meeting.  Ultimate decisions over metrics and plans that impact revenue demonstrates managerial prerogative.  Assigning tasks to subordinates and meeting with them evidences managerial control.

v.  An e-mail dated November 22, 2016. The Exhibit includes the original Spanish language e-mail and relevant certified translated English portions. In the e-mail, a direct report asks for a personal day on December 9th.  Ms. Robayo Villamizar approves the request and advises the subordinate to complete the correct form and provide it to her assistant.  Decisions over direct reports' schedules is an indication of managerial power.

w.  An e-mail dated December 16, 2016. The Exhibit includes the original Spanish language e-mail and relevant certified translated English portions. In the e-mail, a direct report follows up from a task Ms. Robayo Villamizar assigned her and provides the requested information.  Assigning tasks to direct reports falls under the purview of a manager.

x.  A performance review Ms. Robayo Villamizar conducted on direct report Camilo Caycedo in 2016.  Note that all of Ms. Robayo Villamizar's comments are in English.  She advises the direct report of areas for improvement and indicates they discussed the goals she set for him.  Conducting performance reviews on subordinates evidences managerial authority.

y.  Ms. Robayo Villamizar's performance review from 2016.  The performance review confirms the following:  (1) she made ultimate decisions related to meeting customer services levels by managing the supply chain function; (2)

20

she developed, at her discretion, the SOP process; (3) she developed the new supply chain process that supports Manugistics; and (4) she led and directed the Integrated Planning Global Planning (JDA) efforts. Clearly, this review demonstrates Ms. Robayo Villamizar is a manager over a critical function and has ultimate authority over a number of issues.

z.  An e-mail dated February 6, 2017. The Exhibit includes the original Spanish language e-mail and relevant certified translated English portions. In the e-mail, a direct report follows up on a task Ms. Robayo Villamizar assigned her and provides the requested information for her review. Assigning subordinates' tasks demonstrates managerial control. Final approval over the metrics plan indicates managerial power.

aa. A presentation that Ms. Robayo Villamizar wrote in order to train other departments. In the presentation, it is clear she developed a template plan for all affiliate regions to utilize for demand forecasting. It is also evident that all the regions are to implement her model and perform the necessary day-to-day tasks to ensure successful implementation of the process. Setting, at her discretion, new plans and directing others to implement them demonstrates Ms. Robayo Villamizar's managerial prerogative over the supply chain function. This also indicates that others perform the day-to-day administrative tasks related to the function, thus allowing Ms. Robayo Villamizar to manage the function.

bb. A presentation that Ms. Robayo Villamizar wrote in order to train other departments. In the presentation, it is clear that she developed the new SOP process that all affiliates must implement and utilize. It is also evident that her plan is the best practice to support the supply chain distribution for Energizer because it is a highly successful model. Setting, at her discretion, new processes and directing others to implement them demonstrates Ms. Robayo Villamizar's

managerial autonomy over the supply chain function. This also indicates that others perform the day-to-day administrative tasks related to the function, thus allowing Ms. Robayo Villamizar to manage the function.

52.     Plaintiffs therefore provided not just "one" or "some" of the items requested by USCIS (as the RFE indicated was permissible), but instead actually provided "all" of the items requested in the RFE (and many additional items that further bolstered their evidentiary and legal entitlement to a renewal of the L-1 visa).

53.     As such, there was no permissible legal basis for Defendants to deny an L-1 renewal for a person describing the same managerial tasks that she had already successfully presented to the United States Government for approval as a manger in Colombia in 2017.

54.     Despite meeting all statutory and regulatory requirements—and after providing all of the evidence USCIS newly required in the middle of the process—on July 8, 2020, USCIS denied Plaintiffs' L-visa renewal and effectively ordered Ms. Robayo Villamizer deported in the middle of the COVID-19 crisis. *See* Ex. 3.

55.     Defendants' decision insists entirely of a "gotcha game" where completely new requirements were imposed after the fact on Plaintiffs without citation to statute, regulation, or case law.  In addition, no notice of the new evidentiary standards was provided until *after* the visa had been denied, even though it could have been requested in the RFE.

56.     For instance, there can be no dispute that the RFE specifically asked **only** for an explanation and "documentary evidence to establish that the specific function is critical or essential to the foreign entity and that the beneficiary was in a high-level position within the foreign entity, or in a position directly related to a function necessary for the provision of an end product or service of the company. **Your explanation should identify the function with specificity and describe the critical or essential nature of the function and how it relates to the provision of such end product or service.** In addition, provide a detailed description of the percentage of time the beneficiary spent performing such duties to demonstrate that the beneficiary primarily managed the function rather than primarily performed the non-qualifying day-to-day

duties of the function." *See* Ex. 5 (emphasis added)  The RFE **<u>never</u>** stated that any specific type

of corroborating evidence was required *in addition* to the letter.

57.     By contrast, the denial decision then proceeded to move the goal posts to an

entirely different stadium by saying the following:

   a. "The evidence your organization submitted is insufficient. Upon review of the

   evidence listed above, the beneficiary's position abroad does not appear to be

   raised to a level where she primarily operated in a managerial capacity. You

   state the beneficiary managed a function; however, insufficient evidence was

   provided to show how she managed the function. The job description includes

   duties that appear to be administrative in nature as you state she was responsible

   for overseeing the demand/supply planning process at Energizer, Colombia.

   You state she was responsible for developing and delivering plans; however,

   insufficient evidence of her management of this function was provided. You

   state she was responsible for supporting planning tasks such as deployment of

   goods globally, inventory management, and implementation of new systems.

   While this was considered, insufficient evidence was provided to show how

   she operated as a manager in this process; and

   b. *"*Lastly, while the descriptive and illustrative statements were considered,

   insufficient documentary evidence of the beneficiary's job duties was provided.

   **Descriptive statements in a letter, a job description, and the org chart <u>*only*</u>**

   **<u>*illustrate the nature of her position abroad.*</u>** The pay stubs provide evidence

   of pay and employment; however, this is not evidence of her managerial

   performance. As such, the evidence you provided is not sufficient to establish

   the beneficiary operated in primarily a managerial capacity on a daily basis as

   the Associate Manager abroad.

*See* Ex. 3 (emphasis added).

58.     The problem with Defendants' decision is that the Plaintiffs are unfortunately not mind-readers.  Plaintiffs were asked to provide an explanation that would "**identify the function with specificity and describe the critical or essential nature of the function and how it relates to the provision of such end product or service.**" *See* Ex. 5.

59.     Plaintiffs undoubtedly did this, as evidenced by the fact that Defendants moved the goalposts while admitting that "**Descriptive statements in a letter, a job description, and the org chart _only illustrate the nature of her position abroad_**," *see* Ex. 3, which is the only thing, and the exact thing, that Defendants' Request for Evidence asked Plaintiffs to provide.

60.     There are only three sources that Plaintiffs know of to determine what evidence to provide in an L-1 visa application; a) the statutes [i.e., INA 101(a)(15)(L) INA 214(c)]; b) the regulations [i.e. 8 C.F.R. § 214.2(l)]; and c) the case law.

61.     None of the legal authorities cited in Paragraph 60 require anything like what is stated in the denial decision, which is why the denial decision does not cite to any such authority.

62.     On the contrary, Congress specifically stated that the purpose of the L-visa was to "eliminate problems faced by international companies having offices abroad in transferring key personnel _freely_ within the organization." Temporary Alien Workers Seeking Classification Under the Immigration and Nationality Act, 52 Fed.Reg. 5738, 5739 (Feb. 26, 1987) (emphasis added).  The entire purpose of the regulations was to "to facilitate the movement of international personnel and to clarify and simplify requirements for classification and admission." *Id.*

63.     The only requirement in the regulation, 8 C.F.R. § 214.2(l)(1)(ii)(B), is to provide evidence that Ms. Robayo Villamizar "[m]anages the organization, or a department, subdivision, function, or component of the organization;" "[s]upervise[s] and control[s] the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;" "ha[s] the authority to hire and fire or recommend those as well as other personnel actions"; and "[e]xercises discretion over the day-to-day operations of the activity or function for which the employee has authority."

64.     All of this evidence was provided in the letters from Ms. Robayo Villamizar's international supervisors and the evidence that Ms. Robayo Villamizar was responsible for managing a clearly defined essential function – the Demand/Supply Planning function for the Latin American Region.  She was the manager over this essential function, which impacted Energizer's ability to fulfill our customers' needs in a timely manner.  She served as the senior manager responsible for providing centralized managerial oversight over the demand/supply chain function to ensure all processes and procedures, staffing requirements, and budgetary needs were in place for Energizer's demand/supply chain needs.

65.     All that was required here was the application of a modicum of common sense. If there is an employee whose job required them to hire and fire employees, to manage Energizer's entire Latin American supply chain, and to oversee business process changes and train employees on those changes, that individual is a manager.  And there can be no more essential component of a business to manage than its supply chain.  By definition, managing a supply chain is a management position because it requires subordinates to effectuate the supply of products throughout a given market (especially one as large as the Latin American market for batteries).[1]

66.     The purpose of the statute and the regulations is to prevent visa fraud from fake companies and fake workers—it is not to create a gauntlet of paperwork that is never to be traversed with the real-life impact being chaos in multi-national companies and destruction in the lives of individuals and their families  It is hard to understand why Energizer would want to pay

---

[1] The burden of proof is on the petitioner only to make the requisite showing by a preponderance of the evidence. 8 U.S.C. § 1361; *Matter of Martinez-Gonzalez*, 21 I. & N. Dec. 1035, 1036 (B.I.A. 1997). As explained in the USCIS Adjudicator's Field Manual Chapter 11.1(c), the standard of proof is a "preponderance of the evidence" standard, which is met "if there is a greater than 50% probability of the matter occurring or if 'it is more likely than not' that the matter has occurred." Thus, even if USCIS has some doubt, if the petitioner submits "relevant, probative, and credible evidence" meeting this standard of proof, the petition should be approved.  Further, AFM Chapter 11.1(a) requires USCIS to accept and consider documentary evidence that has a "tendency (no matter how small) to either prove or disprove a fact that has a bearing on the issue at hand.  In this case, the wording of Defendant's decision clearly demonstrates that they were seeking evidence that far exceeds the governing standard and the legislative intent for L-1 visas.

over $100,000 per year for a person to manage the North America supply chain planning strategy for Energizer Household Products if that person had never managed a supply chain and supply chain employees before.

67.     The fact that Ms. Robayo Villamizar had already been approved f7or a visa by the U.S. Government under the exact same facts and using the exact same legal criteria in 2017 only serves to underscore the arbitrariness and capriciousness of Defendants' actions.

## FIRST CAUSE OF ACTION
## (JUDICIAL REVIEW UNDER THE ADMINISTRATIVE PROCEDURE ACT)

68.     Plaintiffs re-allege and incorporate by reference all of the allegations of paragraphs 1 through 67 above.

69.     Plaintiff Laura Cristina Robayo Villamizar was eligible to receive an extension of her L-1 visa status and should have received an approval as she met all statutory and regulatory requirements for approval.

70.     Defendants' reasoning in their July 8, 2020 denial decision that Ms. Laura Cristina Robayo Villamizar was not "employed abroad in a position that was managerial, executive, or involved specialized knowledge" is demonstrably false and belied by over 600 pages of record evidence providing clear evidence to the contrary that was not discussed by Defendants in their denial decision.

71.     Defendants' reasoning in their July 8, 2020 denial decision is legally defective as there was no actual legal authority cited to support Defendants' decision.  Defendants' introduction of new evidentiary burdens in the middle of the case was done without any explanation, citation, and without any supportable basis under the law.

72.     Plaintiffs further allege that Defendants' decision of July 8, 2020 was wrong as a matter of law and should be overturned as it invented entirely new evidentiary requirements out of whole cloth that were not supported by statute, regulation, or case-law.

73.     Defendants' actions were unlawful and Plaintiffs' I-129 Petition should not have been denied.  Defendants' denial of the petition violated the law under 8 CFR § 214.1(c)(4) and is reviewable and should be overturned pursuant to the APA at 5 U.S.C. § 706.

**SECOND CAUSE OF ACTION**
**(RELIEF REQUESTED UNDER THE DECLARATORY JUDGEMENT**
**ACT SEEKING REVERSAL OF PLAINTIFFS' I-140 DENIAL)**

74.     Plaintiffs re-allege and incorporate by reference all of the allegations of paragraphs 1 through 67 above.

75.     Plaintiffs allege that Ms. Laura Cristina Robayo Villamizar is still eligible to have her I-129 petition approved as she meets all conditions for approval of her extension of stay.

76.     Plaintiffs aver that, as a matter of law, Ms. Laura Cristina Robayo Villamizar has maintained her status and is eligible for an extension of her L-visa status.  Plaintiffs further allege that Defendants' decision of July 8, 2020 was wrong as a matter of law and should be overturned as it invented entirely new evidentiary requirements out of whole cloth in the middle of the case that were not supported by statute, regulation, or case law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court:

(1) To enter judgement in the favor of Plaintiffs and against the Defendants, finding the acts of the Defendants complained of herein are in violation of law, and issue an order requiring approval of Plaintiff Laura Cristina Robayo Villamizar's I-129 Petition for a Nonimmigrant Worker (L-1 status) from May 19, 2020 to May 18, 2022.

(2) To enter a Judgment declaring that Defendants' denial of Plaintiffs' request for an extension of L-visa status is violative of the INA and its attendant regulations; violative of the Administrative Procedure Act; *ultra vires*; arbitrary and capricious, an abuse of discretion and not otherwise in accordance with law; and

violative of due process;

(3) To enter an order directing Defendants and their agents to issue immediately all necessary and appropriate documents to Plaintiffs to evidence the approval of their visa petitions from May 19, 2020 to May 18, 2022;

(4) To enter an order awarding Plaintiffs their attorneys' fees and costs; and

(5) To enter an order granting such other relief as the Court may deem just, equitable, and proper including discovery into why Defendants improperly changed the decision in this case, who issued the order to change the decision, and on what basis was the decision changed.

Dated: July 28, 2020

Respectfully submitted,

/s/ Leon Fresco
LEON FRESCO
HOLLAND & KNIGHT LLP
801 17th Street, NW, Suite 110
Washington, DC 20006
Telephone: (202)469-5129
Fax: (202)955-5564
Email: leon.fresco@hklaw.com